## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### Southern Division

| | | |
|---|---|---|
| **MONIKA WILLS,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Civil No. TMD 12-2085** |
| **v.** | * | |
| | * | |
| | * | |
| **CAROLYN W. COLVIN,** | * | |
| **Acting Commissioner of Social Security,** | * | |
| | * | |
| **Defendant.**[1] | * | |
| | *********** | |

## MEMORANDUM OPINION GRANTING DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

Monika Wills ("Plaintiff") seeks judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying her applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. Before the Court is Defendant's Motion for Summary Judgment. ECF No. 24.[2] Defendant contends that substantial evidence in the administrative record supports the Commissioner's final decision that Plaintiff is not disabled. No hearing is necessary. L.R. 105.6. For the reasons that

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. She is, therefore, substituted as Defendant in this matter. *See* 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

[2] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002). For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

follow, Defendant's Motion for Summary Judgment (ECF No. 24) is **GRANTED**, and the Commissioner's decision is **AFFIRMED**.

# I

## Background

Plaintiff was born in 1983, has a high-school education, and previously worked as a cashier.  R. at 14.  Plaintiff applied for DIB and SSI protectively on April 30, 2008, alleging disability beginning on February 15, 2008 (later amended to March 31, 2009), due to lupus, rheumatoid arthritis, and "legionnaires pneumonia."  R. at 13, 30-31, 72-78, 84, 88.  The Commissioner denied Plaintiff's applications initially and again on reconsideration; consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  R. at 52-57, 60-64.  On June 24, 2010, ALJ Christine P. Benagh held a hearing in Washington, D.C., at which Plaintiff testified.  R. at 25-36.  On August 10, 2010, the ALJ issued a decision finding Plaintiff not disabled since the alleged onset date of disability of March 31, 2009.  R. at 10-24. Plaintiff sought review of this decision by the Appeals Council, which denied Plaintiff's request for review on May 11, 2012.  R. at 1-4, 9.  The ALJ's decision thus became the final decision of the Commissioner.  *See* 20 C.F.R. §§ 404.981, 416.1481; *see also Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 2083 (2000).

On July 13, 2012, represented by counsel, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision.  Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment.  On January 3, 2014, the Court granted Plaintiff's counsel's motion to withdraw and notified Plaintiff.  The Commissioner thereafter filed her Motion for Summary Judgment (ECF No. 24).  On May 1, 2014, the Clerk of Court notified Plaintiff that she had seventeen days to file a response

to Defendant's Motion for Summary Judgment and that failure to file a timely written response could lead to dismissal of the case or to entry of judgment against her without further notice (ECF No. 25).  The case subsequently was reassigned to the undersigned.  To date, Plaintiff has filed neither a motion for summary judgment nor a response to Defendant's Motion for Summary Judgment.  The matter is now fully submitted.

**II**

**<u>Summary of Evidence</u>**

**A.    Adeyemisi Sosanya, M.D.**

On October 2, 2008, Dr. Sosanya conducted a consultative examination of Plaintiff, which the ALJ summarized in her decision:

> In a consultative examination dated October 2, 2008, Dr. Adeyemisi Sosanya indicated [Plaintiff's] gait was normal, grip is full bilaterally in her upper extremities, no deformities or swelling in her hands.  Despite [Plaintiff's] complaints of severe swelling in her hands, Dr. Sosanya indicated [Plaintiff] had good range of motion of her finger joints and could oppose her thumb to all her fingers.  An examination of all other joints [was] within normal limits.  Dr. Sosanya also indicated that [Plaintiff] had full flexion of her bilateral knee joints and straight leg raising test was negative.  [Plaintiff] could [lie] straight on her back on the table and roll to her side.  She could also walk on her heels and squat without any difficulty.  Based upon this examination, Dr. Sosanya concluded that [Plaintiff] is not in need of any assistive ambulatory device.  No range of motion limitations were observed.

R. at 18 (citations omitted); *see* R. at 161-65.

**B.    State Agency Medical Consultants**

On October 17, 2008, J. Biddison, M.D., assessed Plaintiff's physical residual functional capacity ("RFC").  R. at 166-73.  Dr. Biddison opined that Plaintiff could (1) lift and/or carry 50 pounds occasionally and 25 pounds frequently; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling.  R. at 167.  According to Dr. Biddison, Plaintiff

3

had no postural, manipulative, visual, communicative, or environmental limitations.  R. at 168-70.

On February 25, 2009, J. Johnston, M.D., also assessed Plaintiff's RFC and opined that Plaintiff could (1) lift and/or carry 50 pounds occasionally and 25 pounds frequently; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling.  R. at 192.  She could occasionally climb ladders, ropes, and scaffolds and frequently balance, stoop, kneel, crouch, crawl, and climb ramps and stairs.  R. at 193.  Plaintiff had no manipulative, visual, communicative, or environmental limitations, however.  R. at 194-95.

## C.    Musa Momoh, M.D.

The ALJ summarized in her decision Dr. Momoh's treatment records from October 6, 2008, to February 22, 2009: "In treatment notes from Dr. Musa Momoh, there are no pain complaints from [Plaintiff], no range of motion limitations were observed, and no swelling was observed.  Other than an observation for a facial rash, her physical examinations are normal."  R. at 19 (citation omitted); *see* R. at 174-90.

## D.    Plaintiff's Testimony

In her decision, the ALJ summarized Plaintiff's testimony:

At the hearing, [Plaintiff] testified that due to lupus, she has pain all over her body.  She testified she has severe swelling in her elbows, fingers, knees, legs, and feet.  She testified she cannot work as a result of severe swelling and pain in her joints which prevents [sic] her from walking.

In terms of her activities of daily living, she testified she lives with her children and that she mainly takes care of them on her own.  She testified she receives little help.  She also testified that on her bad days, she stays at home.  She testified that her neighbor helps her with the children if her symptoms are particularly bad.  In addition, she testified her children missed school on some days because she was unable to get out of bed and get them ready for school.

4

In [Plaintiff's] function report dated January 6, 2009, she indicated that she has constant pain in her joints, knees, fingers, elbows, jaw, knuckles, toes, legs, and sometimes her lower back.  She indicated that the pain does radiate to other parts of her body.  She describes the pain as burning and aching.  She rates her pain a 10 on a scale of one to ten.  She reports that everyday activities cause the pain if she is performing a task for a long period of time.  She also stated that lifting, standing, walking, and cold weather make her pain worse.  In addition, she indicated that the pain can last[] the entire day or sometimes it lasts for a couple of hours.  Due to the pain, she reports[] she has had to restrict fixing her hair, running, taking long walks, playing with her children, and taking her children to the park.

To relieve her pain, [Plaintiff] reported that she takes hot baths but she indicated the relief of the pain only lasts for a short time period.  She takes prednisone, hydroxycholoroquine, and tramadol to treat her condition which she indicated causes [sic] drowsiness.

R. at 17-18 (citations omitted); *see* R. at 28-36, 128-29.

## III

### Summary of ALJ's Decision

On August 10, 2010, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset date of disability of March 31, 2009; and (2) had an impairment or a combination of impairments considered to be "severe" on the basis of the requirements in the Code of Federal Regulations; but (3) did not have an impairment or a combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1; and (4) was unable to perform her past relevant work; but (5) could perform other work in the national economy.  R. at 16-20.  The ALJ accordingly found that she was not disabled from March 31, 2009, through the date of the decision.  R. at 21.

In so finding, the ALJ found that Plaintiff had the RFC

to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except with the following limitations.  [Plaintiff] retains the ability to lift/carry no more than ten pounds occasionally.  She can walk/stand at least two hours in an eight-hour workday.  She can sit at least six hours in an eight-hour workday.  In

addition, due to swelling in her joints, she cannot climb ropes, ladders, or scaffolds and can perform certain postural maneuvers occasionally.

R. at 17.[3]  The ALJ also weighed the opinion evidence in the record, giving "substantial weight" to the opinions of the state agency medical consultants because the opinions were supported by the evidence of record.  R. at 19.

Further, regarding Plaintiff's credibility, the ALJ found that her "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [ALJ's RFC] assessment."  R. at 18.  In this regard, the ALJ stated in her decision:

> First, [Plaintiff's] activities of daily living are inconsistent with her claims of disabling limitations.  [Plaintiff] indicated she can prepare meals, attend to her personal care, drive, read, watch television, and shop for groceries and other items.  She also testified that she takes her . . . two young children and receives little help from anyone.  She provides for their needs.
>
> Second, the evidence of record does not corroborate [Plaintiff's] allegations of totally disabling physical symptoms and limitations. . . .
>
> . . . .
>
> [Plaintiff's] complaints regarding the frequency, severity and duration of her fatigue, pain, and difficulty with sleeping are inconsistent with the objective medical evidence and other evidence of record.  [Plaintiff's] complaints also do not justify any further limitations than those set forth in the established [RFC].  [Plaintiff's] physical examinations were consistently unremarkable.  Other than drowsiness reported in the evidence of record, [Plaintiff] reported no additional side effects from [her] medications and there are no reported continuous side effects of medication in the record to establish disability for any 12-month continuous period.  It is noted that there is no treating or examining source in the record that precludes [Plaintiff] from the performance of all work activity.  Notably, no physician has opined that [Plaintiff] has any functional limitations.

---

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."  20 C.F.R. §§ 404.1567(a), 416.967(a).

In short, while severe conditions exist, the objective findings simply do not justify the disabling limitations that [Plaintiff] alleges in her testimony.  The evidence does not justify a finding of disability as the severity of [her] medical conditions does not require surgery, hospitalization, or extensive medical treatment.  Her disability could only be based upon subjective symptoms which I find are not fully credible [except] as to the extent of the [RFC] determined.

. . . .

. . . The medical evidence and other evidence of record suggest that [Plaintiff] can sustain a greater capacity than [she] described at the hearing.  Given this evidence, I conclude that [Plaintiff's] subjective complaints and alleged limitations are not fully persuasive.

R. at 18-20 (citations omitted).

## IV

### Disability Determinations and Burden of Proof

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.  A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations.  20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-380 (2003).  "If at any step a finding of disability or nondisability can be made,

the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of production and proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[4]

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to

---

[4] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work.   20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4).   RFC is a measurement of the most a claimant can do despite his or her limitations. *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).   The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."   20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).   The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.*   If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience. *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy.   *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).   If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not

disabled.  If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## V

## Standard of Review

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence.  *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law."  *Id.*  The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.  *See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner.  *Hancock*, 667 F.3d at 472.  Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court."  *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).  When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ.  *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

Further, Plaintiff's failure to file a motion for summary judgment or a response to Defendant's Motion for Summary Judgment does not fulfill the burdens imposed on moving parties by Fed. R. Civ. P. 56(c).  *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993); *Dobson v. Colvin*, No. 1:12-CV-00946(IDD), 2013 WL 6228662, at *10 (E.D. Va. Nov. 29, 2013).

> Although the failure of a party to respond to a summary judgment motion may leave uncontroverted those facts established by the motion, the moving party must still show that the uncontroverted facts entitle the party to "a judgment as a matter of law."  The failure to respond to the motion does not automatically accomplish this.  Thus, the court, in considering a motion for summary judgment, must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law.

*Custer*, 12 F.3d at 416; *see* Fed. R. Civ. P. 56(e).

## VI

### Discussion

Defendant contends that the ALJ properly evaluated Plaintiff's disability claim using the five-step sequential evaluation process outlined above in Part IV.  The Court has carefully reviewed the ALJ's decision and the entire record.  See *Matthews v. Comm'r, Soc. Sec.*, Civil Case No. ELH-13-1720, 2014 WL 1427182, at *1 (D. Md. Apr. 11, 2014) (citing *Elam v. Barnhart*, 386 F. Supp. 2d 746, 753 (E.D. Tex. 2005) (mapping analytical framework for judicial review of pro se action challenging adverse administrative decision, including (1) examining whether Commissioner's decision generally comports with regulations, (2) reviewing ALJ's critical findings for compliance with the law, and (3) determining from evidentiary record whether substantial evidence supports ALJ's findings)), *adhered to on denial of reconsideration*, 2014 WL 2738276 (D. Md. June 16, 2014).

As noted in Part III above, the ALJ proceeded through all five steps of the sequential evaluation process.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the amended onset date of disability.  R. at 16.  At step two, the ALJ found Plaintiff's impairments of systemic lupus erythematosus ("SLE") and lupus nephritis to be severe.  R. at 16.

At step three, the ALJ found that Plaintiff's impairments neither met nor equaled the impairments listed in Listings 1.04 (disorders of the spine) and 14.02 (SLE) found in 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 1.04 and 14.02.  R. at 16-17.  "The Social Security Administration has promulgated regulations containing 'listings of physical and mental impairments which, if met, are conclusive on the issue of disability.'  A claimant is entitled to a conclusive presumption that he is impaired if he can show that his condition 'meets or equals the listed impairments.'" *Radford*, 734 F.3d at 291 (citation omitted); *see* 20 C.F.R. pt. 404, subpt. P, app. 1.

SLE is "a chronic inflammatory disease that can affect any organ or body system. It is frequently, but not always, accompanied by constitutional symptoms or signs (severe fatigue, fever, malaise, involuntary weight loss)."  20 C.F.R. pt. 404, subpt. P, app. 1, § 14.00(D)(1)(a). Listing 14.02 requires the following:

A.  Involvement of two or more organs/body systems, with:
1.  One of the organs/body systems involved to at least a moderate level of severity; and
2.  At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss).
or
B.  Repeated manifestations of SLE, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:
1.  Limitation of activities of daily living.
2.  Limitation in maintaining social functioning.
3.  Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

*Id.* § 14.02.

The ALJ noted that "no consultative examiner, treating source, medical expert, or [Disability Determination Services] examiner has found that [Plaintiff] meets or equals a listing." R. at 17. Moreover, after reviewing the record, the Court finds that substantial evidence supports the ALJ's finding that Listing 14.02 was neither met nor equaled because "there is no evidence of joint, muscle, ocular, respiratory, cardiovascular, digestive, renal, hematologic, skin, neurological, or mental involvement as characterized by the listing. Further, there is no evidence of significant documented, constitutional symptoms and signs of severe fatigue, fever, malaise, and weight loss." R. at 17. Accordingly, the ALJ did not err at step three of the sequential evaluation process.

Before considering step four, the ALJ found Plaintiff's RFC to be limited to sedentary work with the additional limitations of occasionally lifting/carrying no greater than ten pounds; walking/standing at least two hours and sitting at least six hours in an eight-hour workday; occasional postural maneuvering; and no climbing of ropes, ladders, or scaffolds. R. at 17. In so finding, the ALJ invoked the two-part process for evaluating a claimant's subjective complaints and considered whether Plaintiff's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms were credible. R. at 17-19. The ALJ discussed the medical evidence, noting that Plaintiff's lupus was adequately treated and controlled (R. at 18 (citing R. at 174-90, 199-203)). *See Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (per curiam) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling."). The ALJ also appropriately considered Plaintiff's reported daily living activities (R. at 18 (citing R. at 108-16, 166-73)). *See Johnson*, 434 F.3d at 658; *Gross*, 785 F.2d at 1166; 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). The ALJ further summarized the results of

Plaintiff's consultative examination in October 2008 with Dr. Sosanya, who found no limitations in her range of motion and that she did not need any assistive ambulatory device. R. at 18 (citing R. at 161-65). The Court accordingly finds that substantial evidence supports the ALJ's discounting of Plaintiff's subjective complaints of disabling symptoms and limitations.

The ALJ also afforded "substantial weight" to the state agency medical consultants' opinions regarding Plaintiff's physical RFC, which were less restrictive than the ALJ's RFC assessment. R. at 19. "Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). The ALJ further noted that no treating or examining physician had opined that Plaintiff had any functional limitations. R. at 19. "An ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies,' or has not given good reason for the weight afforded a particular opinion." *Craft v. Apfel*, No. 97-2551, 1998 WL 702296, at *2 (4th Cir. Oct. 6, 1998) (per curiam) (citation omitted). Again, as noted previously, the Court's function is neither to review Plaintiff's claims *de novo* nor to reweigh the evidence of record. The Court instead must determine whether, upon reviewing the whole record, the Commissioner's decision is supported by substantial evidence and a proper application of the law. Under that standard and in light of the evidence cited by the ALJ, the Court finds no error in the ALJ's RFC assessment. *See Matthews*, 2014 WL 1427182, at *2.

On the basis of the ALJ's assessment of Plaintiff's RFC, the ALJ found at step four that Plaintiff could not perform any past relevant work. R. at 20. At step five, the ALJ considered whether Plaintiff could perform other work in the national economy in light of the ALJ's

14

assessment that Plaintiff was limited to sedentary work that involved no climbing of ropes, ladders, or scaffolds and only occasional postural maneuvering (i.e., occasional balancing, stooping, kneeling, crouching, and crawling).  R. at 17, 20.  The ALJ applied 20 C.F.R. pt. 404, subpt. P, app. 2, § 201.27 ("grid rule 201.27"), to find that Plaintiff was not disabled.

> Appendix 2 consists of tables or "grids" that indicate the proper disability determinations for various combinations of age, education, and previous work experience in conjunction with the individual's residual functional capacity, i.e., his maximum capacity for sustained performance of the physical and mental requirements of jobs.  In selecting the proper table, only the physical exertional or strength limitation portion of residual functional capacity the ability to do sedentary, light, medium, heavy, or very heavy work is considered.  Where the findings as to all factors then coincide with the criteria of a particular rule, the rule is conclusive.  Where they do not coincide, the rule serves as a guideline along with the principles and definitions in the regulations, and full consideration must be given to all relevant facts in the case.  Where nonexertional limitations (mental, sensory, or skin impairments) the other portion of residual functional capacity are present [sic], alone or in combination with strength limitations, the factors cannot coincide precisely with a rule.  In addition, the rules are not conclusive where a combination of impairments limits the range of work that an individual can perform at a given exertional level.  Finally, the regulations provide that the claimant may present evidence to rebut the ALJ's findings of fact with respect to vocational factors and residual functional capacity.

> The tables in Appendix 2 also reflect the existence of unskilled jobs in the national economy at various functional levels (sedentary, light, medium, heavy, and very heavy), by incorporating administrative notice of various occupational publications and studies.

*Hall v. Harris*, 658 F.2d 260, 265 (4th Cir. 1981) (citations omitted).

Grid rule 201.27 applies to individuals who are capable of performing the full range of sedentary work, are "younger individuals" (i.e., from 18 to 44 years old), have graduated from high school, and have either unskilled or no previous work experience.  20 C.F.R. pt. 404, subpt. P, app. 2, § 201.27.  As the ALJ noted, an individual would be found not disabled under this rule if that individual could perform the full range of sedentary work.  R. at 20.  The ALJ found, however, that Plaintiff's additional limitations had little or no effect on the occupational base of

unskilled, sedentary work.  R. at 20.  The ALJ accordingly found Plaintiff not disabled, using grid rule 201.27 as a framework for decision-making.  R. at 20.

The ALJ did not err in finding that Plaintiff still could perform unskilled, sedentary work despite the preclusion of climbing ropes, ladders, and scaffolds and the limitation to only occasional balancing, stooping, kneeling, crouching, and crawling.  "Postural limitations or restrictions related to such activities as climbing ladders, ropes, or scaffolds, balancing, kneeling, crouching, or crawling would not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work."  Social Security Ruling[5] ("SSR") 96-9p, 1996 WL 374185, at *7.  Further, "restriction to occasional stooping should, by itself, only minimally erode the unskilled occupational base of sedentary work."  *Id.* at *8; *see* SSR 85-15, 1985 WL 56857, at *6-7 ("Where a person has some limitation in climbing and balancing and it is the only limitation, it would not ordinarily have a significant impact on the broad world of work. . . . If a person can stoop occasionally (from very little up to one-third of the time) in order to lift objects, the sedentary and light occupational base is virtually intact. . . . [L]imitations on the ability to crawl would be of little significance in the broad world of work.  This is also true of kneeling (bending the legs at the knees to come to rest on one or both knees).");  SSR 83-14, 1983 WL 31254, at *2 ("Relatively few jobs in the national economy require ascending or descending ladders and scaffolding. . . . [T]o perform substantially all of the exertional requirements of most sedentary

---

[5]  Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted.  20 C.F.R. § 402.35(b)(1).  Once published, these rulings are binding on all components of the Social Security Administration.  *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984);  20 C.F.R. § 402.35(b)(1).  "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law."  *Pass*, 65 F.3d at 1204 n.3.

and light jobs, a person would not need to crouch and would need to stoop only occasionally (from very little up to one-third of the time, depending on the particular job)."), *4-5 (certain non-exertional limitations, including but not limited to the "inability to ascend or descend scaffolding, poles, and ropes" do not significantly affect the ability to perform work). The ALJ, therefore, properly relied on the grids at step five to find that Plaintiff was not disabled.

In sum, substantial evidence supports the decision of the ALJ, who applied the correct legal standards in this case. Accordingly, Defendant's Motion for Summary Judgment is **GRANTED**, and the Commissioner's decision is **AFFIRMED**.

## VII

## <u>Conclusion</u>

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 24) is **GRANTED**. The Commissioner's decision is **AFFIRMED**. A separate order shall issue.

Date: July 14, 2014                                   _____/s/_____

                                                                    Thomas M. DiGirolamo
                                                                    United States Magistrate Judge